IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs September 6, 2018

**STATE OF TENNESSEE v. KENNETH S. GOURLEY**

**Appeal from the Circuit Court for Dyer County**
**No. 10-CR-371      R. Lee Moore, Jr., Judge**

_____

**No. W2017-00919-CCA-R3-CD**

_____

The Appellant, Kenneth S. Gourley, appeals the trial court's order revoking his probationary sentence and ordering him to serve the remainder of his sentence in confinement. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT H. MONTGOMERY, JR., JJ., joined.

Noel H. Riley, II, Dyersburg, Tennessee, for the Appellant, Kenneth S. Gourley.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Counsel; Danny Goodman, Jr., District Attorney General; and Karen Burns, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

On March 8, 2011, the Appellant pled guilty to one count of possession of .5 grams or more of methamphetamine with the intent to deliver. He received a ten-year sentence, which, after one year was spent in confinement, was to be served on community corrections. On August 5, 2013, the trial court revoked the Appellant's community corrections sentence and ordered him to serve his sentence in confinement. On January 3, 2014, the Appellant was furloughed into a rehabilitation program. After successfully completing the program, the Appellant was released on probation.

The Appellant's probation officer, Cody Crawford, filed the first probation violation report on December 17, 2015. A probation revocation hearing was set for May 16, 2016; however, the Appellant did not appear for the hearing. Crawford filed a supplemental probation violation report on March 15, 2017. A probation revocation hearing was held on March 21, 2017.

At the hearing, Crawford testified that on October 7, 2014, after completing the rehabilitation program, the Appellant was placed under Crawford's supervision. Before Crawford filed the December 17, 2015 probation violation report, the Appellant committed several infractions that Crawford referred to the Administrative Case Review Committee. Crawford did not, however, specify the infractions for the trial court.

In the December 17, 2015 probation violation report, Crawford listed several infractions. Notably, the Appellant failed to provide verification of his employment or his search for employment in November and December 2015. Additionally, Crawford discovered that as of November 17, 2015, the Appellant had moved from the residence the probation office had as his listed address to an unknown location. Crawford tried to make contact with the Appellant on multiple occasions, spoke with the people with whom the Appellant had been living, and spoke with the Appellant's mother. Despite his efforts, he was unable to discover where the Appellant was living. Further, the Appellant failed to report for November, failed to schedule a reporting date for December, and failed to maintain communication with Crawford. Additionally, as of December 10, 2015, the Appellant had a supervision fee arrearage of $273. The Administrative Case Review Committee had ordered him to pay a minimum of $28 per month towards the arrearage, but the Appellant had failed to comply. The Appellant's last payment toward his supervision fees was $245 on July 13, 2015. Finally, the Appellant owed $3,464.50 in court costs; his last payment towards his court costs was $200 on March 19, 2015.

Crawford filed a follow-up probation violation report on March 15, 2017. The report reflected that on September 29, 2016, the Appellant was arrested for burglary, theft of property valued over $1,000, and felony failure to appear due to his failure to appear in court for the first probation revocation hearing. Further, from December 10, 2015, to September 29, 2016, the Appellant failed to contact the probation office and failed to provide proof of employment or verification that he had been searching for employment. Crawford said that the Appellant had been in the custody of the Dyer County Sheriff's Office since September 29, 2016. As of March 14, 2017, the Appellant owed $273 in supervision fees and $3,814 in court costs.

On cross-examination, Crawford said that the Appellant's drug tests were negative but noted that the Appellant usually "wasn't reporting in to even test him." Crawford acknowledged that the Appellant successfully completed a rehabilitation program.

- 2 -

The Appellant testified that he had been incarcerated since September 29, 2016. The Appellant maintained that he stopped reporting because "they had violated me and I went to jail on the violation and bonded out and I didn't know I was suppose [sic] to report."

The Appellant said that after he completed the rehabilitation program, he reported to Crawford. From March 2015 to November 2015, the Appellant worked for Trinity Marine. Because of the hours he worked, he had difficulty meeting with Crawford at 4:30 p.m., which was his scheduled appointment time. To accommodate the Appellant's work schedule, Crawford changed the appointment time to 6:30 p.m. Occasionally, due to production problems at work, the Appellant was unable to meet with Crawford at 6:30 p.m. On two occasions, the Appellant left work early to meet with Crawford, but his employer warned that he would be fired if he continued to leave work early.

The Appellant said that while he was working for Trinity Marine, he paid "what [he] could" toward his court costs and fines. He noted that insurance and child support payments were deducted automatically from his paycheck.

The Appellant said that "at the end of violation," he did not have the money to pay his court costs and fines. Crawford informed him that he needed to get a new job or attend the late appointments at the probation office. The Appellant said that he did not want to quit his job, so he stopped reporting. He explained, "I thought it would work out but it didn't."

The Appellant said that before he went through the rehabilitation program, he took drafting classes from the Tennessee College of Applied Technology and that he was "two months from graduating."

The Appellant asked the trial court to grant him probation, saying that had he tried his best to fit into society and to get a better career to benefit his and his children's lives. The Appellant maintained that the violations were the result of "unfortunate . . . events, not everything I had control of and trying to take care of all of the kids and pay my own way . . . . [I]t was hard." The Appellant said he had the potential to find a job if he were released and that he wanted to finish school.

On cross-examination, the Appellant said that the man who helped him get his job usually gave him a ride to work and that the man had gotten in trouble for taking off work to drive the Appellant to his meetings with Crawford. The Appellant did not have a cellular telephone and borrowed a telephone from a friend's brother to call Crawford. The Appellant told Crawford about his problems with reporting, and Crawford responded "that he did all he could do to get [the Appellant] there at 6:30 and that that's all he could do."

- 3 -

The Appellant acknowledged that he initially was granted community corrections. After it was revoked, he went into a rehabilitation program at The Lighthouse in Memphis. He completed the program and was released on probation. The Appellant acknowledged that he knew the rules of probation, including that he had to stay in contact with Crawford and inform Crawford of where he was living but that he failed to comply.

The trial court noted that it would not violate the Appellant's probation because of his failure to pay fees or court costs. The trial court found that the Appellant failed to provide verification of his employment; however, the court said that this failure alone would not have caused the court to violate the Appellant's probation. Nevertheless, the trial court found that the Appellant also failed to report as he was supposed to for a period of ten months, moved without informing his probation officer of his whereabouts, and was arrested on new charges. The court revoked the Appellant's probation "in full" and ordered him to serve the remainder of his sentence in confinement.

On appeal, the Appellant contends that the trial court erred by revoking his probation in full and should have granted him a "partial revocation."

## II. Analysis

Upon finding by a preponderance of the evidence that the Appellant has violated the terms of his probation, a trial court is authorized to order the Appellant to serve the balance of his original sentence in confinement. See Tenn. Code Ann. §§ 40-35-310 and -311(e); State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). Probation revocation rests in the sound discretion of the trial court and will not be overturned by this court absent an abuse of that discretion. State v. Leach, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995); see State v. Pollard, 432 S.W.3d 851, 864 (Tenn. 2013) (concluding that abuse of discretion with a presumption of reasonableness is the appropriate standard of appellate review for all sentencing decisions). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." State v. Phelps, 329 S.W.3d 436, 443 (Tenn. 2010).

The Appellant does not dispute that he violated his probation. Therefore, the trial court did not abuse its discretion by revoking his probation. This court has repeatedly cautioned that "an accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing." State v. Jeffrey A. Warfield, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. at Nashville, Feb. 10, 1999); see also State v. Timothy A. Johnson, No. M2001-01362-CCA-R3-CD, 2002 WL 242351, at *2 (Tenn. Crim. App. at Nashville, Feb. 11, 2002). Thus, we conclude that

- 4 -

the trial court did not abuse its discretion by ordering that he serve his ten-year sentence in confinement.

### III. Conclusion

We affirm the judgment of the trial court.

_____
NORMA MCGEE OGLE, JUDGE